472 So.2d 537 (1985)
Dorian FLETCHER, Appellant,
v.
STATE of Florida, Appellee.
No. 84-865.
District Court of Appeal of Florida, Fifth District.
June 27, 1985.
Rehearing Denied July 11, 1985.
*538 James B. Gibson, Public Defender, Larry B. Henderson, Asst. Public Defender, and Kenneth Witts, Certified Legal Intern, Daytona Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Mark C. Menser, Asst. Atty. Gen., Daytona Beach, for appellee.
SHARP, Judge.
Fletcher appeals from his conviction of attempted robbery with a weapon. He maintains the state presented insufficient evidence that a weapon was used. He also challenges the trial court's application of section 775.0845, Florida Statutes (1983), which enhances the penalty for an offense where the offender, while committing the offense, wears a device that conceals his identity. We affirm.
The evidence given at trial established that late one evening, Fletcher and another man dressed themselves as women and solicited an automobile ride from Charles Otts. He thought they were female prostitutes. Fletcher and his cohort propositioned Otts but he refused. After Otts stopped the car, Fletcher pulled the car keys out of the ignition and stated, "If you want your keys back you're going to have to give us some money."
Otts replied that he did not have any money. Fletcher then placed an object to his throat and told him it was a razor blade. Otts did not see the blade, but he felt it touch his throat and he described it as "cold and hard." Fletcher's companion joined in threatening that if the victim did not give them some money they would cut him up. Otts managed to flee from his car to a telephone, where he called the police. Fletcher and his companion sought to restrain Otts, and they shouted they were looking for a bottle to break to use as an additional weapon. The following day Otts identified Fletcher as one of the individuals who had tried to rob him.
The state charged Fletcher with attempted robbery with a deadly weapon, to-wit: a firearm or a cutting instrument. The jury, however, found him guilty of the lesser included offense of attempted robbery with a weapon.[1] At trial, defense counsel *539 moved for a judgment of acquittal based upon insufficient evidence to prove use of a deadly weapon.
Initially, we think it was not fatal to the prosecution that a weapon was not introduced into evidence inasmuch as the police never found one. See, e.g., G.E.G. v. State, 417 So.2d 975, 977 (Fla. 1982) (where a defendant is charged with possession of a controlled substance, that substance, if available must be introduced into evidence). See also T.T. v. State, 459 So.2d 471 (Fla. 1st DCA 1984) (Evidence sufficient to support finding of use of a firearm in robbery where victims testified defendant had an object which appeared to be a gun and defendant stated to victims, "Give me the money or I'll blow your brains out," and "Stop or I'll shoot.").
Further, we think that based upon Otts' testimony regarding the physical characteristics of the object pressed against his throat and Fletcher's admissions as to the nature of the object, that there was sufficient evidence presented from which a jury could find that the object held to Fletcher's throat was a razor blade  clearly a "deadly weapon" under such circumstances.[2]See United States v. Seastrunk, 580 F.2d 800 (5th Cir.1978), cert. denied, 439 U.S. 1080, 99 S.Ct. 863, 59 L.Ed.2d 50 (1980) (Evidence sufficient to establish use of gun where victim testified she was familiar with guns and defendant had opened his shirt and displayed what she thought was a gun butt); T.T. v. State, supra; compare Ryder v. State, 464 So.2d 1324 (Fla. 5th DCA 1985) (Robber's statement, "This is a holdup," without evidence that defendant in fact had a weapon, cannot amount to clear and convincing proof of the possession necessary for departure from the guideline sentence for unarmed robbery).
Next, Fletcher maintains the trial court erred by overruling his objection to the state's special verdict form which reads:
We, the jury, find that while committing this offense, the defendant was wearing devices that concealed his identity.
The state derived this special verdict form from section 775.0845, Florida Statutes (1983), which provides in pertinent part:
Wearing masks while committing offense; enhanced penalties.  The penalty for any criminal offense, other than a violation of ss. 876.12-876.15, shall be increased as provided in this section if, while committing the offense, the offender was wearing a hood, mask, or other device that concealed his identity.
Fletcher argues he did not conceal his identity because there was evidence at trial that the police knew him as a man who dresses as a woman in the vicinity of Orange Blossom Trail in Orlando, Florida. Prior to trial, he sought to dismiss that portion of the information pertaining to concealment of identity, contending his true identity is that of a woman. At trial, a police officer testified that he had seen Fletcher on several occasions and that each time he was dressed as a woman. The officer stated further, however, that he did not know whether Fletcher always dressed like that. There was no other evidence at trial on this issue.
*540 To-date, no Florida case has discussed section 775.0845, Florida Statutes (1983) except to characterize it as an enhancement statute. Dominguez v. State, 461 So.2d 277 (Fla. 5th DCA 1985); Walcott v. State, 460 So.2d 915 (Fla. 5th DCA 1984); Cuthbert v. State, 459 So.2d 1098 (Fla. 1st DCA 1984); Cooper v. State, 455 So.2d 588 (Fla. 1st DCA 1984), review denied, 464 So.2d 554 (Fla. 1985). Nor is the legislative history of section 775.0845 particularly enlightening.[3] However, it appears the statute is aimed at criminals who employ devices either to make witnesses' identifications of them difficult or to otherwise facilitate the commission of a crime. This may include covering up one's face; or altering one's appearance by disguise or costume.[4] The officer's testimony in this case does not preclude the reasonable inference that Fletcher's disguise under the circumstances was a device used to facilitate his criminal behavior. Accordingly, under the facts presented at trial, we conclude that the court did not err by allowing the special verdict pertaining to section 775.0845.
We decline to address the defendant's constitutional attack on section 775.0845, Florida Statutes (1983), because he did not challenge the statute below on those grounds and we find no fundamental error.[5]Smith v. Brantley, 400 So.2d 443 (Fla. 1981); Hegeman-Harris Co. v. Allstate Pipe Supply Co., 400 So.2d 1245 (Fla. 5th DCA), review dismissed, 411 So.2d 380 (Fla. 1981); Marino v. State, 392 So.2d 36 (Fla. 2d DCA 1981); Chatman v. State, 393 So.2d 557 (Fla. 4th DCA 1980).
AFFIRMED.
ORFINGER, J., concurs.
DAUKSCH, J., dissents with opinion.
DAUKSCH, Judge, dissenting:
I respectfully dissent.
In my opinion the wearing of women's clothing by a man is not the wearing of a "hood, mask, or other device that concealed his identity" such as the legislature meant to proscribe in the statute 775.0845. The days when a person's gender can be readily ascertained by the attire worn have passed. When the legislature said "hoods" and "masks" or other "device to conceal identity" I do not think they meant inappropriate clothing. In fact, the legislature could have said disguise and thus included not only transvestites but also false mustaches, wigs and other ways to alter identity. To the contrary, the legislature said conceal by hood or mask or the like, which would obscure or hide rather than disguise or alter. We should take the legislature at its words  especially in penal criminal statutes.
The penalty should not be enhanced in this case in my opinion.
NOTES
[1] Section 790.001(13), Florida Statutes (1983):

"Weapon" means any dirk, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon on or device, or other deadly weapon except a firearm or a common pocket knife.
See Miller v. State, 421 So.2d 746, n. 1 (Fla. 4th DCA 1982):
A dirk or dagger is defined as "any straight knife to be worn on the person which is capable of inflicting death, except what is commonly known as a "pocket knife." "Dirk" and "dagger" are used synonymously and consist of any straight stabbing weapon as a dirk, stiletto, etc. Century Dictionary. They must consist of any weapon fitted primarily for stabbing. (Citations omitted). The test of a "dirk or dagger" is its capability for use as a stabbing weapon. (Citations omitted).
[2] In moving for a judgment of acquittal, the defendant admits not only the facts stated and the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence. A court should not grant a motion for judgment of acquittal unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law. Lynch v. State, 293 So.2d 44 (Fla. 1974).
[3] Section 775.0845 was enacted as part of Chapter 81-249 which legislative history reads:

WHEREAS, the Supreme Court of Florida, in Robinson v. State, [393 So.2d 1076] Case Number 58,232, decided December 18, 1980, held that s. 876.13, Florida Statutes, was unconstitutional because it was susceptible of application to entirely innocent activities, and
WHEREAS, the Legislature desires to retain the prohibitions contained in that section and similar sections without prohibiting entirely innocent activities, and
WHEREAS, the Legislature desires to further discourage the use of masks in the course of criminal activities by providing enhanced penalties for any crime committed by a person who was wearing a mask. ..
[4] The word "conceal" is not limited to the suggestion of hiding. See Webster's Third New International Dictionary of the English Language Unabridged 469 (1976):

conceal: 1: to prevent disclosure or recognition of: avoid revelation of: refrain from revealing: withhold knowledge of: draw attention from: treat so as to be unnoticed... 2: to place out of sight: withdraw from being observed: shield from vision or notice.
[5] We note, however, other statutes and ordinances prohibiting cross-dressing have been held unconstitutional where the prohibition was not associated with criminal conduct and bore no reasonable relationship to public health, safety, morals and welfare. See Doe v. McConn, 489 F. Supp. 76 (S.D.Texas 1980); Cincinnati v. Adams, 42 Ohio Misc. 48, 330 N.E.2d 463 (1974); see also Annot., 12 A.L.R. 4th 1249 (1982).